## Case No. 2,996.

### The COLIMA.

[5 Sawy. 181.][1]

District Court, D. California. May 13, 1878.

#### SALVAGE.

The fact that both vessels belonged to the same owner furnishes no ground of exemption to a claim for salvage compensation by the master and crew of the salving vessel. Proof of a contract, usage, or understanding, that no such claim shall be made will defeat it.

[Cited in Re A Lot of Whalebone, 51 Fed. 924.]

In admiralty.

Edward Gray Stetson, for libellant.
Lake & McKoon, for claimant.

HOFFMAN, District Judge. At the hearing of this cause it was stipulated that the facts, as stated in the opinion of this court, in the case of Pacific Mail Steamship Co. v. Ten Bales of Gunny Bags [Case No. 10,648], should be deemed and taken to have been duly proved in this cause. The case referred to was a libel against the cargo of the steamer Colima, for a salvage service performed by the steamer Arizona. The facts were briefly as follows:

On the fifteenth of March, 1874, the steamer Colima, then on a voyage from Panama to this port, having become disabled by the loss of several blades of her propeller, sought refuge under Cerros island, where she came to an anchor. On the succeeding day, boats were dispatched to the north and south, with instructions to intercept and send to her assistance any steamer that might be fallen in with. After a navigation of several days, one of the boats met the steamer Arizona, bound for San Francisco, and her master on hearing the situation of the Colima at once proceeded to Cerros island, where he arrived on the morning of the twenty-fifth, and on the evening of the same day he started with the Colima in tow for this port, where she arrived on the thirtieth of March. The distance from Cerros island to San Francisco is seven hundred and thirty miles. The voyage of the Arizona was lengthened by reason of the service some two and a half or three days. Her deviation was not considerable, as the usual course of steamers along the coast is, in fine weather, not far from the island, and such was in fact the position of the Colima when the ac-

cident occurred. Both vessels belonged to the same owner, the Pacific Mail Steamship Company. The present libel is filed by the master of the Arizona, on behalf of himself and the crew, to recover a salvage compensation.

In the reported case above referred to, it was held that the fact that both vessels belonged to the same owners was no bar to a claim for salvage against the goods on board the salved vessel. The authority chiefly relied on in the opinion delivered in that case was The Miranda, 3 Adm. & Ecc. 561, in which the right of the master and crew of the salving vessel to a share of the compensation was recognized. In the case of The Sappho, 3 Adm. & Ecc. 142, the cause was instituted on behalf of the boatswain and seventeen seamen, part of the crew of the Nero. Both vessels belonged to the same owners. The claim was resisted, on the ground that it was commonly understood that where assistance is rendered to one vessel of a fleet belonging to a great company by another, salvage was never claimed by the crew; that the latter had not acted beyond the scope of their duties; they were bound by the articles to do what they did do, and were paid by wages for their time and labor. But the court overruled the defense, chiefly on the authority of Lord Stowell's judgment in The Waterloo, 2 Dod. 433. Sir Robert Phillimore after citing Lord Stowell's language in that case remarks: "It seems to me clear from this language that Lord Stowell intended to lay down the law that the general right to salvage reward could be ousted only by virtue of an express agreement framed in the clearest and most binding terms." The passage cited by the learned judge perhaps justifies the very strong statement of Lord Stowell's opinion contained in the above extract. But on perusing the whole judgment it will appear, that Lord Stowell seems to admit that an exemption from liability to salvage may be made out by adequate proofs of an usage and understanding to that effect. The grounds of exemption set up were: First. Written documents, viz., the charter-party and instructions; Second. The usage which was described in the argument as generally understood by all parties.

It was in reference to the written documents that Lord Stowell uses the language quoted by Sir Robert Phillimore. Where the claim set up is a discharge from liability to salvage under any circumstances whatever, and this claim is founded on written documents, the discharge should "appear in express terms, and in a contract that by the use of clear and explicit terms should remove all doubt respecting the common understanding of both parties." But with respect to the second ground of exemption, Lord Stowell observes: "It has been said, however, that there is an acknowledged understanding to this effect, and that this un-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

·derstanding is sufficiently proved by the usage as well as the instructions. As to the instructions they appear to be very limited in their application; in the first place they apply to associated ships only, and do not extend to other ships which are merely employed by the company, but if they did, they extend no further than to enjoin the duty of assisting other ships belonging to the company, but they do not express that this duty which it is very proper to enjoin, shall receive no remuneration, whatever be the active merit, whatever be the suffering incurred in performing it. It is the duty ·of all ships to give succor to others in distress, none but a freebooter would withhold it, but that does not discharge from liability to payment where assistance is substantially given. The company might possibly sustain their claim of exemption in cases ·of slight services rendered by ships in their employ, but it is quite another thing to sustain a sweeping claim of exemption in all cases whatever. But the usage is said to prove the existence of the understanding. I have already noticed that the usage is ·not described in any proper limitation of its extent." His lordship then proceeds to consider the nature of the alleged usage and the proofs in support of it. He finds the former to be indefinite and not described in any proper limitation of its extent, while the latter are insufficient and inconclusive. It may, however, be inferred that if the reverse had been the case, and the usage and ·common understanding satisfactorily established, the exemption would have been allowed. It is to be borne in mind that the case before Lord Stowell was a salvage service rendered by a ship chartered by the East India Company to a ship owned by the company. It does not appear that the master and crew of the chartered ship were in the ·employ, or in any respect the servants of the East India Company.

In the case at bar the claim is made by the master of a ship owned by the P. M. S. S. Co. for services rendered by him to another vessel owned by the same company and engaged in the same general business. No evidence whatever has been offered to show the nature of the contracts made by the company with the masters in their employ, or the existence of any usage or understanding with regard to compensation for assistance rendered to disabled vessels of the company. The court is not informed whether their appointments are general, and their services to be rendered on board of any ship to which they may be ordered, or whether they are special to serve as masters of a specified ship. The instructions under which they act have not been exhibited. They might perhaps have thrown some light on the question. whether taking a disabled vessel of the line in tow for a few hours or days is not within the scope of the duties required by their contracts; and in the contemplation of both parties to be rendered without extra compensation. The only fact in evidence from which a tacit understanding of this nature may be suspected is, that of six instances where similar services have been rendered, the present is the first where the claim to salvage compensation has been attempted to be enforced by the master and crew. And even in this case the libel was not filed until more than eighteen months after the service was rendered, and not until the libellant had ceased to be in the company's employ. But these facts are insufficient to establish an usage, understanding, or contract, by which the rights of the libellant are modified or controlled, and as the authorities are clear that the fact that both vessels belonged to the same owner furnishes to the latter no ground of exemption, I am obliged to recognize the claim of the libellant to a salvage remuneration. But it is a claim that cannot be reviewed with favor.

No proofs are necessary to show that the vessels of the company's line plying between this port and Panama are liable to become disabled and almost helpless from accidents to their machinery. That the aid of other vessels of the line is not unfrequently required and afforded is in evidence. It may reasonably be presumed that to render such assistance is a duty contemplated by the masters of the steamers as likely to arise, and the fact that so far as appears no claim has hitherto been made for a salvage remuneration for discharging it; and the circumstance that this claim was not made until long after the performance of the service, justifies the suspicion that it is an after thought, and was not contemplated when the service was rendered; a suspicion confirmed by the fact that in the suit by the P. M. S. S. Co. to recover a salvage compensation from the owners of the Colima's cargo, no claim was made on behalf of the libellant or crew to be allowed a share of the salvage. The service itself was of a low order of merit. It consisted merely in towing the Colima into port, and involved, so far as appears, no extra exertion or labor on the part of the master or crew of the Arizona. The only inconvenience to which they were subjected was that their voyage was lengthened some two and one half or three days.

In the case of The Sappho, one thousand seven hundred and fifty dollars were awarded to be divided among eighteen of the crew. The service lasted five days during tempestuous weather and was difficult and perilous. I shall award to the libellant the sum of two hundred and fifty dollars, being the amount of one month's pay. The crew on whose behalf he professes to sue are not represented in court. His proctor disclaims all authority from them to command the ship. He is ignorant of their whereabouts and does not even know their names. It is not

pretended that they have empowered or requested the master to act for them. They have probably long since dispersed to various quarters of the globe, and any sum decreed to them would remain unclaimed in the registry of the court. There can be no propriety in decreeing to them a compensation which they have not asked, and to which they probably do not consider themselves entitled.